UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

    v.                         Criminal# 04-10372 WGY

JESS SICILIANO

**DEFENDANT'S MOTION FOR THE COURT TO ACCEPT HIS PLEA OF GUILTY AND SENTENCING MEMORANDUM**

The defendant Jess Sicilano respectfully requests that this court accept his plea of guilty entered before this Honorable Court on September 6, 2005. At that time the United States Attorney and Siciliano agreed pursuant to Fed.R.Crim.P. 11(c)(1)(c) that the following disposition was appropriate:

(a)     Imprisonment for a period of 46 months;

(b)     a fine at the low end of the guidelines range unless the court finds that Siciliano is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay a fine.

(c)     Forfeiture of $11,060.00;

(d)     mandatory special assessment of $100.00; and

(e)     supervised release of three years.

The defendant suggests that this sentence is "sufficient but not greater than necessary" to achieve the

1

statutory purposes of punishment, as required by 18 USC §3553(a) in light of United States v. Booker, 125 S.Ct. 738 (2005).

## Guidelines

The U.S. Attorney and the defendant have entered into an agreement, pursuant to Rule 11 (c)(1)(c), whereby the parties have agreed to take the position that the defendant is responsible for an amount of oxycodone which is the equivalent of 100 to 400 kilograms of marijuana (400 pills) and that the base offense level is 26.  The probation office maintains that the defendant is responsible for an amount of oxycodcone that is the equivalent of 482.4 kilograms of marijuana, and that the base offense level is 28 (900 pills).

The defendant suggests that he is accountable for the quantity he accepted responsibility for during his September 6, 2005 guilty plea to count 1 of the indictment; specifically, 8 grams (100 pills; marijuana equivalency 53,600 grams) on November 18, 2004 and 24 grams (300 pills; marijuana equivalency 160,800 grams) for a total of 32 grams (400 pills; marijuana equivalency 214,400 grams or 214.4 kilograms). Pursuant to U.S.S.G. §2D1.1(c)(7), since the amount of marijuana equivalency for which the defendant is responsible is at least 100 kilograms but less than 400

kilograms, the base offense level is 26.  Counsel for the defendant took the position during plea negotiations that the government did not have sufficient evidence linking Siciliano to a final alleged 500-pill sale.  As part of the plea negotiations the Government agreed not to include this amount in the proposed plea calculation. [1]  With a three level decrease for acceptance of responsibility, the defendant suggests that the total offense level is 23 (46-57 months).  The agreed upon 46-month period of incarceration is within the presumptive guideline range the defendant suggests should apply.

**I.   GIVEN THE DEFENDANT'S LACK OF CRIMINAL HISTORY, HIS BACKGROUND, AND HIS DEEP REMORSE, THIS HONORABLE COURT SHOULD ACCEPT THE DEFENDANT'S PLEA AND RESULTING SENTENCE AS AN ACCEPTABLE CONSTITUTIONAL PLEA BARGAIN THAT RESULTS IN A SENTENCE "SUFFICIENT BUT NOT GREATER THAN NECESSARY."**

In <u>United States v. Rafael Yeje-Cabrera et al</u>, 430 F.3d 1, 2005 WL 2868315 (C.A.1 (Mass.)) the First Circuit

---

[1]    As noted in paragraph (26) of the pre-sentence report the co-defendant, Michael Arco, during taped conversations, referred to other sources of supply that were available to Arco.  At the time of his arrest, upon turning over the 500 pills that are in question, the co-defendant Michael Arco made a statement to the effect that Jess Siciliano was the only one he knew that was involved and the agents already had him.  As mentioned, Arco had other sources of supply available to him.  As noted above, counsel for the defendant took the position during plea negotiations that the government did not have sufficient evidence linking Siciliano to the final 500-pill sale.  A fact-finder could conclude that these 500 pills came from another source and that Arco's post-arrest statements were seeking to protect that source, simply naming Siciliano because the agents already knew him.

Court of Appeals describes plea bargaining as, "an essential part of our criminal justice system" and "a highly desirable part for many reasons." Id. at 18, *citing* Santobello v. New York, 404 US 257, 92 S.Ct. 495 (1971); *accord* Blackledge v. Allison, 431 US 63, 71, 97 S.Ct. 1621, (1977).

The Court of Appeals states:

> Fact bargaining may arise when there are different views of the facts, counsels' ability to prove them, and their consequences.  See e.g., Sarner, "Fact bargaining" Under the Sentencing Guidelines: The Role of the Probation Department, 8 Fed. Sent. R. 328, 1996 WL 671569, at *2 ("Counsel for both sides must asses their prospects for success before a jury, based on a wide variety of conflicting factors that develop during the government's investigation and as available defenses.  That the truth appears somewhere in between, after the dust has settled, is a world view shared by most criminal practitioners…The basic assumption behind plea and fact bargaining is that criminal conduct, like human behavior in other contexts, is never black and white."). United States v. Rafael Yeje-Cabrera et al at 430 F.3d at 23.

"Defendants who plead guilty will receive a benefit in sentencing over those who do not, in both charge bargaining and fact bargaining situations."  Id at 19.

The Supreme Court has "unequivocally recognized the constitutional propriety of extending leniency in exchange

for a plea of guilty and of not extending leniency to those

who have not demonstrated those attributes on which

leniency is based," <u>Corbitt v. New Jersey</u>, 439 U.S. 212,

224, 99 S.Ct. 492; 58 L.Ed.2d 466 (1978) as quoted in

<u>United States v. Yeje-Cabrera et al,</u> 430 F.3d at 25.

**II.  THIS COURT SHOULD ADOPT REASONABLE DOUBT AS THE STANDARD OF PROOF REQUIRED AT A SENTENCING HEARING SUFFICIENT TO SATISFY A DEFENDANT'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE SUPREME COURT'S DECISION IN <u>UNITED STATES V. BOOKER</u>, 125 S.CT. 738 (2005).**

While the U.S. Sentencing Commission (pre-<u>Booker</u>)

stated in its commentary to the U.S.S.G. sec. 6A1.3 that

"the use of a preponderance of the evidence standard is

appropriate to meet due process requirements and policy

concerns…", Justice Thomas' dissent in <u>Booker</u> points out

that:

> …the Court's holding today corrects this mistaken belief.  The Fifth Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by the jury or admitted by the defendant.
> <u>Booker</u>,125 S Ct. at 798 n. 6 (Thomas, J. dissenting).

As such, to protect the defendant Siciliano's Fifth

Amendment rights this court should find that the standard

of proof beyond a reasonable doubt is the appropriate

standard to apply at sentencing.  As previously discussed in this memorandum the defendant Siciliano specifically pled guilty to, admitted to, and accepted responsibility for 400 oxycodone pills which the defendant suggests results in a presumptive Guideline range of 26.

### III. POST BOOKER SENTENCING CONSIDERATIONS

The Supreme Court's decision in <u>United States v. Booker</u>, 125 S.Ct. 738 (2005) has broad ramifications.  The sentencing guideline range is no longer binding on the Court, but is only one of five factors to be considered in determining the sentence. <u>Booker</u>, 125 S. Ct. at 764-65. The other four factors are (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentence available; (3) the need to avoid unwarranted sentencing disparity; and (4) the need to provide restitution. <u>Id</u>.; 18 U.S.C. § 3553(a)(1), (a)(3), (a)(6)-(7).

In considering the Section 3553(a) factors, the sentencing guidelines are to be given no more or less weight than any other factor. <u>See</u> <u>United States v. Jaber</u>, 362 F. Supp. 2d 365, 370- 76 (D. Mass. 2005) (providing comprehensive analysis of why sentencing guidelines do not

reflect statutory purposes of punishment); <u>United States v.</u>
<u>Ranum</u>, 353 F. Supp. 2d 984, 987 (E.D. Wis. 2005) (same).
Perhaps even more important, however, is that <u>Booker</u>
establishes a new, independent limit on the sentence that
may be imposed. The primary sentencing mandate of Section
3553(a) states that courts must impose the minimally-
sufficient sentence to achieve the statutory purposes of
punishment—justice, deterrence, incapacitation, and
rehabilitation: The court shall impose a sentence
*sufficient, but not greater than necessary*, to comply with
the purposes set forth in [18 U.S.C. § 3553(a)(2)].  18
U.S.C. § 3553(a) (emphasis added).

    This so-called "parsimony provision" is not simply a
factor to be considered in determining sentence, it
represents a cap above which the Court is *statutorily*
*prohibited* from sentencing—even when a greater sentence is
recommended by the sentencing guidelines. <u>See</u> <u>United States</u>
<u>v. Denardi</u>, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker,
J., concurring in part, dissenting in part).

## **<u>Background</u>**

    When the defendant was three years old his alcoholic
father left the family, leaving his mother to raise him and
his sister as a single parent.  From the age of 12 it never
entered Jess Siciliano's mind that he would be anything but

a major league baseball player.  In Little League he was on the eleven and twelve year old All Stars teams and won most valuable player in both tournaments.  He pitched when the twelve-year-old All-Stars won the District Championship.

In high school he was an undefeated pitcher throughout.  In his junior year he suffered the first of many injuries that necessitated surgery when he tore the meniscus in his left knee.  On June 6, 1996, after successful seasons in Junior College and with the Long Island Tigers, the Pittsburgh Pirates drafted Siciliano in the 9th round.

The defendant's professional baseball career began in Erie Pennsylvania playing "A" ball.  In the third week of the season he was diagnosed with mono-nucleuses and missed the whole year.  In spring training the next season he pulled his hamstring and missed three months.  The next season he developed a severe case of tendonitis in his right elbow and missed two months.  The next season the defendant got shoulder tendonitis.

In 2000 Siciliano played the entire season for the Sioux Fall Canaries.  He suffered a torn Labrum in his right shoulder, which was misdiagnosed as tendonitis and an inflamed bursa sac.  The current diagnosis was made on 1-8-2001.  In 2002 the defendant played with the Brocton Rocks

for approximately seven weeks until injuring his back on his birthday essentially ending his career in professional baseball.

The defendant wishes to address the court to accept responsibility and express his deep remorse for his crimes.


Respectfully submitted,
JESS SICILIANO
By his attorney,


/s/ James E. McCall
Four Longfellow Place
Suite 3703
Boston, Massachusetts 02114
(617) 263-7400
BBO#327365